(Not for Publication)                                    (Docket Entry Nos. 58, 59, 65)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                                :
DENNIS L. CARLSON,                              :
                                                :
                        Plaintiff,              :        Civil No. 06-3779 (RBK/KMW)
                                                :
            v.                                  :        **OPINION**
                                                :
TOWNSHIP OF LOWER ALLOWAYS             :
CREEK, et al.,                                  :
                                                :
                        Defendants.             :
_____         :

**KUGLER**, United States District Judge:

　　This case arises out of Plaintiff Dennis L. Carlson's termination from the position of Superintendent of Public Works of the Township of Lower Alloways Creek.  Plaintiff brings numerous claims against both the Township of Lower Alloways Creek ("the Township") and Wallace Bradway ("Bradway"), who was the Mayor of the Township at the time of Plaintiff's termination.  Presently before the Court are motions for summary judgment filed by Bradway and the Township, as well as a motion for partial summary judgment filed by Plaintiff.  For the reasons set forth below, the motions filed by Bradway and the Township will be granted, and Plaintiff's motion will be denied.

1

# I. BACKGROUND

## A. Facts

On October 3, 2000, the Township Committee adopted a motion to appoint Plaintiff as Temporary Public Works Manager, effective October 1, 2000 through December 31, 2000, with the intent that Plaintiff would become Superintendent of Public Works on January 1, 2001.  (Pl.'s Ex. 1.)  On October 30, 2000, the Township Committee and Plaintiff entered into a contract which provided that Plaintiff would serve as Superintendent of Public Works from January 1, 2001 until December 31, 2003.  (Township Ex. A.)

According to Plaintiff, during and after the campaign for the election of the Township Committee in late 2003 and early 2004, Committee persons Dale G. Donelson and Richard Harris made comments expressing their intention to rid the Township Police Department and Public Works Department of older employees.  Plaintiff objected to these comments.  (Pl.'s Ex. 3, Plaintiff's Deposition, at 53, 140-43.)

On January 6, 2004, the Township Committee entered into a second employment contract with Plaintiff; this contract provided that Plaintiff would serve as Superintendent of Public Works from January 1, 2004 until December 31, 2005.  The contract provided that "[t]enure shall be provided pursuant to NJSA 40A:9-154.6."   The contract also provided that "[i]ncorporated herein by reference, and made a part hereof, are all sections of Chapter 32, Article VI ("Superintendent of Public Works") of the Code of the Township of Lower Alloways Creek not inconsistent with the provisions of this contract."  (Township Ex. B.)

Beginning in early 2004, the Township Committee asked certain Township employees, including several employees within the Department of Public Works, if they were interested in

early retirement.  (Pl.'s Ex. 7.)  Plaintiff was concerned that certain workers were pressured into accepting early retirement, and complained to Township Committee members Dale Donelson and Richard Harris.  (Pl.'s Ex. 3 at 116-17, 119-20.)

In December 2004, disciplinary charges were filed against Plaintiff.  The allegations against him included: (1) failing to properly and timely perform his job duties; (2) lying to Deputy Mayor Richard Harris regarding an incident in which Township employees damaged someone's flowers; (3) behaving inappropriately toward other employees; (4) demonstrating a poor management style; (4) and using incorrect calculations to justify keeping garbage collection in-house.  (Township Reply Br. Ex. S.)  A hearing was conducted in March 2005, but the charges do not appear to have been resolved at that time.

On July 14, 2005, Plaintiff completed an EEOC Charge Information Questionnaire.  In this questionnaire, Plaintiff indicated that the Township was attempting to discharge him because of his age and in retaliation.  Plaintiff also indicated that the Township was motivated by the fact that he would soon be eligible for tenure and by his refusal to be "partial."  (Pl.'s Ex. 11, Charge Information Questionnaire.)

On August 26, 2005, Mayor Bradway and Township Committee member Robert Drummond met with Plaintiff and told him that David Hinchman, who worked for Plaintiff and had testified against Plaintiff in the March 2005 disciplinary hearing, had reported that Plaintiff was retaliating against him for his testimony.  Bradway and Drummond told Plaintiff that harassing an employee in retaliation for his testimony was illegal.  (Township Ex. J, Plaintiff's Deposition, at 187-88, 190-93; Township Ex. K, Memorandum from Drummond and Bradway to Plaintiff.)  After the August 26, 2005 meeting, Plaintiff filed a grievance, dated August 27, 2005,

3

complaining that the meeting was "harassment and retaliation for [his] expectation of the Public Works employees to provide an efficient and effective service to the residents of this and the other Townships we serve." Plaintiff stated in his Grievance that he had "filed with the E.E.O.C." (Township Ex. M, Grievance.)

On September 6, 2005, Drummond and Bradway sent Plaintiff a letter responding to his grievance. They advised Plaintiff that he was "required to report to, be directed by and perform duties as directed by the Mayor, or when practical, by the Township Committee." Further, they advised that Plaintiff was obligated "to meet with [his] employer when directed to do so, and to discuss workplace issues and policies that concern subordinates in [his] department." They stated that because the August 26 meeting was "part of [his] obligation and not a disciplinary action," the grievance procedure was not applicable. They further stated that because Plaintiff's grievance stated that he had filed with the EEOC, "the Township understands that you have decided not to further pursue any internal mechanisms for dispute resolution that may be available to you." (Township Ex. N.)

On September 6, 2005, Plaintiff requested that his grievance be scheduled for the September 20, 2005 Township meeting, to be held in open session. On September 12, 2005, this request was denied. Mayor Bradway and the Township Committee explained that "[p]ursuant to OPMA [the Open Public Meetings Act], matters involving litigation or anticipated litigation cannot be discussed in open public session," and (2) "OPMA precludes discussion of any matters, such as these, involving confidential personnel matters and/or which may intrude on privacy concerns of other employees." Also on September 12, 2005, Plaintiff received a notice that the Township Committee would be meeting on September 20, 2005 to discuss Plaintiff's

employment. (Pl.'s Ex. 13.)

On September 20, 2005, the Township Committee unanimously adopted a resolution to immediately remove Plaintiff from his position pursuant to the Township Code, Section 32-18. (Township Ex. O.)

### B.  Procedural History

On August 11, 2006, Plaintiff filed a complaint against the Township, Bradway, and members of the Township Committee.  His complaint contained claims of violation of the Age Discrimination in Employment Act ("ADEA"); Intentional Infliction of Emotional Distress; violation of the New Jersey Law Against Discrimination ("NJLAD"); and violation of the Tenure Statute, N.J. Stat. Ann. § 40A:9-154.6.  On March 28, 2008, the defendants filed a motion for partial summary judgment with respect to Plaintiff's Tenure Act claim and with respect to all claims against Bradway and the members of the Township Committee.

On December 2, 2008, the Court granted the defendants' motion with respect to Plaintiff's Tenure Act claim and all claims against members of the Township Committee.  The Court denied the defendants' motion with respect to Plaintiff's claim that Bradway aided and abetted a violation of the NJLAD.  The Court found that Plaintiff had presented a prima facie case of retaliation under the NJLAD, that the defendants had failed to offer any legitimate non-discriminatory reason for their actions, and that therefore there was sufficient evidence of a NJLAD violation to withstand the defendants' motion for summary judgment.  Further, the Court found that there was sufficient evidence that Bradway aided and abetted a NJLAD violation.

On December 8, 2008, Plaintiff filed an amended complaint.  In this complaint, Plaintiff added new claims of breach of contract, misrepresentation, breach of the duty of good faith and

fair dealing, and denial of due process.  On March 31, 2009, the Township and Bradway filed

motions for summary judgment, seeking dismissal of Plaintiff's amended complaint in its

entirety.  On May 18, 2009, Plaintiff filed a cross-motion for partial summary judgment, seeking

judgment on liability for his claims of breach of contract, breach of the covenant of good faith

and fair dealing, misrepresentation, and violation of due process.

## II.  STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact

and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine

issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In

determining whether summary judgment is appropriate, '[t]he evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in his favor.'"  Tabas v. Tabas, 47 F.3d

1280, 1287 (3d Cir. 1995) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of

demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture

Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either

by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by

"'showing' – that is, pointing out to the district court – that there is an absence of evidence to

support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the moving party satisfies its burden, the nonmoving party must respond by "set[ting]

out specific facts showing a genuine issue for trial.  If the opposing party does not so respond,

summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P.

56(e)(2).

## III.  DISCUSSION

### A.  Breach of Contract

Both Plaintiff and the Township have moved for summary judgment with respect to Plaintiff's breach of contract claim.  In his Amended Complaint, Plaintiff claims that the Township breached the January 2004 employment contract by (1) terminating Plaintiff in the middle of his term and (2) failing to enact an ordinance making the Tenure Statute applicable to the Township.  (Amended Complaint at ¶ 37.)  In his brief, Plaintiff adds that the Township breached the employment contract by violating Township Code Section 32-18, which was incorporated into the contract, by not paying him "forthwith" after terminating him.  Plaintiff also argues in his brief that the Township violated the Lower Alloways Creek Employment Policy Manual by failing to provide him with a grievance procedure.  The Court will address only those claims in Plaintiff's Amended Complaint.  See Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" (quoting  Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)).

The Court finds that the Township did not breach the contract either by terminating Plaintiff in the middle of his term or by failing to enact an ordinance making the Tenure Statute applicable to him.  Therefore, the Township's motion for summary judgment will be granted with respect to the breach of contract claim, and Plaintiff's motion for summary judgment will be denied with respect to this claim.

### 1. Termination

Plaintiff claims that the Township Committee breached the employment contract by terminating him in the middle of his term.  However, the contract incorporates Section 32-18 of the Lower Alloways Creek Code (see Township Ex. B), which provides that "[t]he Superintendent of Public Works may be removed by a three-fifths vote of the Township Committee."  (Township Ex. T.)  Plaintiff has identified nothing in the contract that forbids the Township Committee from terminating him in the middle of his term.  Thus, the Court finds that the Township Committee did not breach the contract by terminating Plaintiff before the end of his term.

### 2. Failure to Enact Ordinance

Plaintiff claims that the Township Committee breached the contract by failing to enact an ordinance authorizing tenure for the Superintendent of Public Works.  Plaintiff's contract provided that he would be provided tenure in accordance with N.J. Stat. Ann. § 40A:9-154.6, which states:

> A person holding office, position or employment as full-time municipal superintendent of public works who has held the office, position or employment continuously for 5 years or more shall continue to hold the office, position or employment, notwithstanding he is serving for a fixed term, during good behavior and efficiency and shall not be removed therefrom for political or other reasons except for good cause, upon written charges filed with the municipal clerk and after a public, fair and impartial hearing; except that the governing body of the municipality shall first pass an ordinance authorizing the tenure of office herein provided.

The Court finds that the failure to enact an ordinance as provided for pursuant to N.J. Stat. Ann. § 40A:9-154.6 was not a breach of contract.  The employment contract did not provide that the Township Committee would enact an ordinance before Plaintiff had served five years;

8

rather it provided that Plaintiff would be provided with tenure in accordance with the statute. Under the statute, Plaintiff would not be entitled to tenure until he had held the position of Superintendent of Public Works for five years.  Plaintiff held the position for less than five years,[1] and therefore was ineligible for tenure under the statute.

### B.  Breach of Duty of Good Faith and Fair Dealing

Both the Township and Plaintiff have moved for summary judgment with respect to Plaintiff's claim of breach of the covenant of good faith and fair dealing.  Plaintiff's claim is based on the "termination of [his] employment without notice, cause or opportunity to be heard, and without crediting plaintiff with the privileges of the New Jersey Tenure Statute as provided under the employment contract."  (Amended Complaint ¶ 45.)  Again, Plaintiff impermissibly expands his claims in his brief, and now claims that the Township breached the covenant of good faith and fair dealing by failing to pay him a lump sum in accordance with 32-18 of the Lower Alloways Creek Code and by terminating him ten days before he would have received tenure. This Court will only address the claims in Plaintiff's Amended Complaint.

"Every contract in New Jersey . . . contain[s] an implied covenant of good faith and fair dealing."  Fields v. Thompson Printing Co., 363 F.3d 259, 270 (3d Cir. 2004).  "A plaintiff may be entitled to relief in an action under the covenant if the defendant acts with ill motives and without any legitimate purpose to destroy the plaintiff's reasonable expectations."  Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 329 (3d Cir. 2006) (citing Wilson v. Amerada

---

[1]  Plaintiff held the position until September 20, 2005, the day the Township Committee voted to terminate him.  The resolution provided that the effective date of Plaintiff's separation from employment was September 20, 2005.  Plaintiff states in his complaint that because he was paid until December 31, 2005, he held the position until that date.  The Court is not persuaded by this argument.

Hess Corp., 773 A.2d 1121, 1130 (N.J. 2001)).

     First, the Court finds that the failure to enact an ordinance as provided for under the Tenure Statute was not a breach of the covenant of good faith and fair dealing.  The contract expressly provides that Plaintiff would receive tenure in accordance with the Tenure Statute, which provides that the Superintendent of Public Works would be entitled to tenure after serving for five years.  In light of the express contractual provision, the Court finds that Plaintiff had no reasonable expectation that the Township would pass an ordinance providing for tenure before Plaintiff had served as Superintendent of Public Works for five years.

     Second, termination without notice and an opportunity to be heard was not a breach of the covenant of good faith and fair dealing.  There is nothing in the contract that would give Plaintiff an expectation that he was entitled to any particular procedures before being terminated.

     Third, termination without cause is not a violation of the covenant of good faith and fair dealing.  Plaintiff argues that there is a breach of the covenant of good faith and fair dealing when an employer "attempts to deprive the employee of the benefits of the employment agreement without an honest belief that good cause for discharge is in fact present."  See King v. Port Auth. of N.Y. and N.J., 909 F. Supp. 938, 942 (D.N.J. 1995), aff'd, 106 F.3d 385 (3d Cir. 1996).  However, the King court also noted that in order to bring such a claim, a plaintiff must point to some language in his contract that "guarantees that he will not be terminated except for good cause."  Id.; see also Barone v. Leukemia Soc'y of Am., 42 F. Supp. 2d 452, 458 (D.N.J. 1998) (noting lack of case law to support argument that where employment is at-will "the employer's obligation to act in good faith imposes on the employer a contractual obligation to provide continued employment or to fire only for good cause").  Here, Plaintiff has failed to

bring to this Court's attention any provision of the contract, any statute, or any portion of the employee manual that guarantees that he would not be terminated without cause.  Plaintiff could not have had a reasonable expectation of such a guarantee.  Therefore, Plaintiff has failed to provide evidence of a breach of the covenant of good faith and fair dealing and the Township's motion for summary judgment will be granted with respect to this claim.  Accordingly, Plaintiff's motion for summary judgment on this claim will be denied.

### C.  Misrepresentation

Both the Township and Plaintiff have moved for summary judgment on Plaintiff's claim of misrepresentation.  Plaintiff's claim is based on his allegation that the Township induced him into signing an employment contract by promising tenure and then failed to enact an ordinance providing for tenure.  (Amended Complaint at ¶¶ 39-43.)  This appears to be a claim of fraud. "The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

Plaintiff contends that the Township promised him tenure, but never intended to enact the ordinance necessary to provide for tenure.  The court finds that none of the evidence Plaintiff has presented supports this claim.

Plaintiff notes that Wallace Bradway, Committee Member Richard E. Harris, and former Mayor Jeffrey A. Dilks testified that tenure would not be provided "automatically" once Plaintiff had served for five years.  They testified that the Township would have to pass an ordinance to provide for tenure.  (See Pl.'s Ex. 6 at 71; Pl.'s Ex. 8 at 193-98; Pl.'s Ex. 9 at 61-62.)  This

testimony is consistent with the contract provision providing for tenure pursuant to the Tenure Statute.

Bradway further testified that the Township never passed an ordinance in order to make the Tenure Statute effective.  (See Pl.'s Ex. 9 at 67.)  However, there is no evidence that Plaintiff was promised that an ordinance would be passed before he had served five years.

Finally, Plaintiff cites the testimony of former Mayor Dilks.  When asked whether it was his "intent that Dennis Carlson would receive tenure if he had worked till December 31st of '05," Dilks said:

> I can't really say that I had a thought at the time other than, you know, keeping things – you know, keeping the contract fair and above board for both – both parties.  Never thought, well, gee, this will be the situation in two years or whatever.  It's just this is what it is, the state requires it and this is what we do.

(Pl.'s Ex. 6 at 72.)  Further, when asked whether the contract was "a promise that the term of appointment for Dennis Carlson shall be two years, . . . and terminating on December 31st, tenure shall be provided pursuant to a statute," Dilks replied "It would not have been a promise in my eyes." (Id.)  Even if Dilks' testimony can be interpreted to mean that the members of the Township Committee did not believe that they were obligated to provide Plaintiff with tenure after five years, it does not indicate fraud.

Because Plaintiff has not presented any evidence that the Township committed fraud by representing that tenure would be provided to him pursuant to the Tenure Statute, the Township's motion for summary judgment will be granted with respect to this claim.  Accordingly, Plaintiff's motion for summary judgment on this claim will be denied.

### D.  Intentional Infliction of Emotional Distress

The Township seeks summary judgment on Plaintiff's claim of Intentional Infliction of Emotional Distress.  "[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe."  Buckley v. Trenton Saving Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988) (citing M. Minzer, Damages in Tort Actions, vol. I, § 6.12 at 6-22 (1987)).  The Buckley court explained the elements of the tort:

> Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. . . .  Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress.  Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it."

Buckley, 544 A.2d at 863 (internal citations omitted).

Here, the Township argues that Plaintiff cannot establish either the second or the fourth element.  With respect the fourth element, the Township notes that Plaintiff testified that as a result of the emotional distress caused by his experience with the Township, he has had trouble sleeping since 2004.  Plaintiff testified that he had not undergone any treatment for his sleep problems.  (Township Ex. J at 242-45.)  In his brief, Plaintiff does not point to any evidence of the severity of his emotional distress.  Thus, the only evidence before the Court is Plaintiff's deposition testimony that he has had trouble sleeping.  The Court finds that this evidence is "insufficient as a matter of law to support a finding that the mental distress was so severe that no reasonable man could endure it."  See Buckley, 544 A.2d at 864 (finding insufficient evidence of severe emotional distress where plaintiff complained of "aggravation, embarrassment, an

13

unspecified number of headaches, and loss of sleep"); see also Lascurain v. City of Newark, 793

A.2d 731, 748 (N.J. Super. Ct. App. Div. 2002) (noting that plaintiff must generally show

"dramatic impact on her every-day activities or on her ability to function daily").  Because

Plaintiff has failed to present evidence which would support a finding that his emotional distress

was severe, the Court will grant the Township's motion for summary judgment on Plaintiff's

claim of intentional infliction of emotional distress.

### E.  Due Process

Both Plaintiff and the Township have moved for summary judgment on Plaintiff's Due

Process claim.  Plaintiff contends that he was denied procedural due process because he was

terminated without notice of the charges against him or a meaningful opportunity to respond.

The Township argues that it had no duty to afford notice and an opportunity to respond because

Plaintiff was not deprived of a liberty or property interest.  Plaintiff's response is that his contract

created a property interest and that he had a liberty interest in his reputation.

"The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property."  Bd. of

Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).  An employment contract can

create a property interest for the term specified in the contract if the contract states that the

employee may only be terminated for cause.  See Harrington v. Lauer, 888 F. Supp. 616, 619

(D.N.J. 1995).  However, the property interest the contract creates is "the right to receive the full

amount of compensation provided for in [the] contract."  Id. at 620.  Here, Plaintiff's contract did

not create a property interest because it did not provide that he could only be terminated for

cause.  Moreover, even if Plaintiff's contract created a property interest, it was only the right to

14

receive the full amount of compensation provided for in the contract, which Plaintiff received. Therefore, the Court finds that he was not deprived of a property interest.

Plaintiff also argues that he was deprived of a liberty interest in his reputation. "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)).[2]  This is called the "stigma plus" test.  Hill, 455 F.3d at 236.

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." Id. (internal citations omitted).  Plaintiff describes the deprivation of his liberty interest as follows:

> Plaintiff Carlson has also alleged deprivation of his liberty interests in his reputation, based upon the manner in which Mayor Bradway orchestrated the termination of the plaintiff, namely a private meeting with attorney, instruction for them to prepare resolution of non-renewal of contract, an executive session where no discussion is recorded because none took place, and a public session where the motion was made, a request to respond was made, the denial was insisted upon, a vote was taken.

(Pl.'s Br. at 23.)  Plaintiff does not describe any false and stigmatizing statement that was  made publicly in conjunction with his termination.  Therefore, Plaintiff has failed to satisfy the "stigma" portion of the stigma plus test.[3]

---

[2] In arguing that he has a liberty interest in his reputation, Plaintiff relies on Wisconsin v. Constantineau, 400 U.S. 433 (1971).  However, in Paul v. Davis, the Supreme Court explained that the Constantineau Court did not hold that damage to one's reputation alone justified invoking the procedural protections of the due process clause; rather, the combination of damage to one's reputation and the "depriv[ation] . . . of a right previously held under state law" justified invoking the protections.  See Paul, 424 U.S. at 708-09.

[3] Plaintiff appears to have satisfied the "plus" portion of the test because he was terminated.  See Hill, 455 F.3d at 238 ("[A] public employee who is defamed in the course of

Because Plaintiff has failed to show that he was deprived of a property or liberty interest, the Township's motion for summary judgment on Plaintiff's procedural due process claim will be granted and Plaintiff's motion for summary judgment on this claim will be denied.

## F. ADEA and NJLAD

The Township and Bradway have moved for summary judgment on Plaintiff's claims of retaliation under the ADEA and the NJLAD. Retaliation claims under the ADEA and under the NJLAD are analyzed pursuant to the McDonnell Douglas framework. See Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (ADEA); Mancuso v. City of Atlantic City, 193 F. Supp. 2d 789, 811 (D.N.J. 2002) (NJLAD).[4] First, a plaintiff must establish a prima facie case by presenting evidence that "(1) that [he] engaged in protected activity; (2) the activity was known to the employer; (3) plaintiff suffered an adverse employment decision; and (4) there existed a causal link between the protected activity and the adverse employment action." Young v. Hobart West Group, 897 A.2d 1063, 1072 (N.J. Super. Ct. App. Div. 2005) (citing Craig v. Suburban Cablevision, Inc., 660 A.2d 505, 508 (N.J. 1995)).[5] "Once a plaintiff establishes a prima facie case of retaliation, the defendants must 'articulate a legitimate, non-retaliatory reason for the

---

being terminated or constructively discharged satisfies the "stigma-plus" test even if, as a matter of state law, he lacks a property interest in the job he lost.").

[4] Plaintiff suggests that a mixed-motives analysis is applicable in this case. However, the Supreme Court recently held that the mixed-motives analysis is not appropriate in an ADEA case. See Gross v. FBL Financial Servs., Inc., 129 S. Ct. 2343, 2350 (2009). To the extent that a mixed motive analysis is still appropriate under the NJLAD, the Court finds that Plaintiff has not presented sufficient evidence for a mixed motives analysis of his retaliation claim.

[5] The prima facie case under the ADEA does not explicitly contain the second element. See Fasold, 409 F.3d at 188 (listing elements of prima facie case of retaliation under ADEA).

16

decision.'"  Young, 897 A.2d at 1072-73 (quoting Romano v. Brown & Williamson Tobacco

Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995)).  "To defeat summary judgment

when the defendant answers plaintiff's prima facie case with legitimate, non-discriminatory

reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from

which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action."  Shirden v. Cordero, 509 F. Supp.

2d 461, 468 (D.N.J. 2007) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

### 1.  Prima Facie Case

First, the Court finds that there is sufficient evidence that Plaintiff engaged in a protected

activity.  Plaintiff claims that he engaged in a protected activity by objecting to the harassment of

older Township employees and by submitting a charge information questionnaire to the EEOC.

The Township argues that Plaintiff did not engage in any protected activity because he did not

have a reasonable and good faith belief that the Township was engaged in an unlawful

employment practice.  See Drinkwater v. Union Carbide Corp., 904 F.2d 853, 865 (3d Cir. 1990)

("[A] plaintiff establishes a retaliation claim if she shows that she had a reasonable belief that her

employer was engaged in an unlawful employment practice and that the employer retaliated

against her for protesting against that practice"); Carmona v. Resorts Int'l Hotel, Inc., 915 A.2d

518, 530 (N.J. 2007) ("[W]e hold that, in a case in which a plaintiff alleges retaliation under the

LAD, N.J.S.A. 10:5-12d, the plaintiff bears the burden of proving that his or her original

complaint-the one that allegedly triggered his or her employer's retaliation-was made reasonably

and in good faith.").

The Township argues that when Plaintiff complained about the treatment of older employees, he did not have a good faith and reasonable belief that employees were being targeted because of their age.  The Township has pointed to evidence that certain employees were encouraged to retire for reasons other than age.  However, Plaintiff and a number of other witnesses testified that Dale Donelson and/or Richard Harris said they intended to get rid of older employees.  (See Pl.'s Ex. 3 at 120, 140-42; Pl.'s Ex. 10, Deposition of Richard Venable at 22, 35; Deposition of Myron Smith at 43; Deposition of John J. Smith at 58.)  Thus, there is evidence that Plaintiff's belief that older employees were being discriminated against was in good faith and reasonable at the time he complained to Township Committee members.

Further, Plaintiff engaged in a protected activity when he contacted the EEOC to complain of discrimination.  Defendants argue that Plaintiff did not have a reasonable and good faith belief that the Township was engaging in illegal activity at the time he contacted the EEOC.  However, in light of the evidence of comments about "getting rid of" older employees, the Court finds that there is evidence that Plaintiff had a reasonable and good faith belief that he was being discriminated against at the time he completed his EEOC questionnaire.

The Court also finds that Plaintiff has provided sufficient evidence of the remaining elements of his prima facie case.  There is evidence that the Township was aware of Plaintiff's protected activity.  In his August 27, 2005 grievance, Plaintiff informed the committee that he had "filed with the E.E.O.C."  (Township Ex. M.)  Further, the Court finds that Plaintiff suffered an adverse employment action after he contacted the EEOC – he was terminated.  Finally, the Court finds that the temporal proximity between Plaintiff's grievance and his termination, which were approximately one month apart, is evidence of causation.  See Kachmar v. SunGard Data

18

Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (noting that "temporal proximity between the employee's protected activity and the adverse employment action . . . is an obvious method by which a plaintiff can proffer circumstantial evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action'" (quoting Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990)). In sum, the Court concludes that Plaintiff has presented sufficient evidence to support a prima facie case of retaliation.

### 2. Legitimate Non-Discriminatory Reason

The Township has articulated several legitimate non-discriminatory reasons for terminating Plaintiff –  (1) he failed to perform his job duties competently; (2) he was a poor manager who harassed subordinates; and (3) he failed to follow the directives of Township Committee Members.

Several members of the Township Committee testified that they had received complaints from Township employees that Plaintiff was harassing them.  (See Township Ex. D at 130; Township Ex. E at 56-57; Township Ex. F at 107-111.)  Moreover, the December 2004 disciplinary charges against Plaintiff included charges that he treated Jon Finlaw, Public Works Dispatcher, "poorly and in a demeaning and condescending way" and that he "deliberately intimidated Sherry Halstead, Township Clerk" by physically blocking a door.  (Township Reply Br. Ex. S at 4.)  In addition, the memorandum memorializing the August 26, 2005 meeting states that Drummond and Bradway informed Plaintiff that David Hinchman had complained that Plaintiff was retaliating against him for his testimony at the disciplinary hearing.  (Township Ex. K.)

Township Committee members also testified that Plaintiff failed to follow directions

from the Committee.  (See Township Ex. D at 217-18; Township Ex. E at 144-45; Township Ex.

F at 100-01.)  Deputy Mayor Richard Harris sent Plaintiff a memorandum on July 2, 2004,

advising him to consult portions of the Code Book of the Township pertaining to the duties of the

Superintendent of Public Works.  The memorandum stated, "I am asking you to review this

because of the meeting we held yesterday (July 1, 2004) and your interpretation that the

Committee does not have the authority to make requests or provide direction as to how your

department is to run."  (Township Ex. H.)

In sum, the Township has articulated more than one legitimate, non-discriminatory reason

for its decision to terminate Plaintiff and has offered evidence to support its reasons.

### 3.  Pretext

Because the Township articulated a legitimate non-discriminatory reason for Plaintiff's

termination, the burden shifts back to Plaintiff to "point to some evidence, direct or

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action."  Shirden, 509 F.

Supp. 2d at 468.  The Court finds that Plaintiff has failed to meet this burden.

Plaintiff points out that the EEOC determined that "the evidence obtained during the

investigation establishes violations of ADEA in that [Plaintiff] was discharged from his position

after he informed [the Township] that he had filed a complaint with the EEOC.  In addition, older

employees were subjected to disparate treatment."  However, the EEOC finding was based in

part on the Township's failure to "provide any evidence to show that [Plaintiff] did not work well

with the Township Committee or had any . . . performance issues."  (Pl.'s Ex. 11.)  This case is

different because the Township has presented evidence to support its legitimate non-discriminatory reasons for terminating Plaintiff.

Plaintiff also points to the fact that less than one month passed between the time he informed the Township that he had filed with the EEOC and the time he was terminated. This fact alone, however, is insufficient to allow a factfinder to disbelieve the Township's proffered reasons or to conclude that the Township was more likely than not motivated by a desire to retaliate against Plaintiff for engaging in a protected activity.

Plaintiff also argues that "Defendants' contentions of low morale [within the Public Works Department] are subject to cross-examination in that the contentions can be shown to be pretextual." (Pl.'s Br. at 35.) This unsupported argument that pretext can be shown is insufficient to meet Plaintiff's burden.

Finally, Plaintiff argues that he "has pointed to sufficient evidence to support an inference that the employer did not act for its articulated legitimate reasons, the non-performance of plaintiff, in that there is not one document that supports their statement except a thank you letter from a John Finlaw." (Pl.'s Br. at 35.)[6] While the evidence upon which the Township relies is primarily deposition testimony, the Court finds that this fact alone is not evidence that the Township's proffered reasons for terminating Plaintiff are a pretext for discrimination. Because Plaintiff has not offered evidence that the proffered reasons for his termination are pretext, he has failed to meet his burden, and Defendants' motions for summary judgment on Plaintiff's ADEA

---

[6] In this thank you note, Finlaw, who had worked in the Public Works Department, said that he had been working in a hostile work environment and was grateful for his transfer to the Municipal Building. (Township Ex. G.)

21

and NJLAD claims will be granted.[7]

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted and Plaintiff's motion for partial summary judgment is denied.  An accompanying order shall issue today.

Dated:   8-12-09          /s/ Robert B. Kugler
                          ROBERT B. KUGLER
                          United States District Judge

---

[7] Because the Court finds that both Defendants are entitled to summary judgment on this basis, the Court need not address Bradway's separate arguments as to why he personally is entitled to summary judgment on Plaintiff's NJLAD and ADEA claims.